CASE 67—REVOCATION OF DEVISE—NOVEMBER 29, 1884.

# Haselwood's Ex'r, &c., v. Webster, &c.

### APPEAL FROM TAYLOR CIRCUIT COURT.

1. It was a common law rule that a sale by a testator, after the making of his will, of land devised by it, or of a chattel bequeathed by it, was a revocation of the devise, or an ademption of the legacy; and this rule prevails by statute in this State, unless the devisee or legatee is an heir of the testator.
2. The burden of proof is upon the party claiming against a will to show that the testator intended a revocation of his will by selling the property.
3. The mere sale of the land did not create the presumption that the testator so intended. Other evidence must be produced.

W. E. & L. A. RUSSELL AND W. LINDSAY FOR APPELLANTS.

1. If, at the time the testator sold and conveyed the one hundred and fifty-one acres of land, he intended to revoke or adeem the devise to the appellees, they then lost all their rights under the will.
2. If he changed his mind, then he was bound, in order to make the change operative in favor of appellees, to republish his will to evidence the change.
3. That he intended to revoke the devise, is clearly proved. (Section 11, chapter 113, General Statutes.)

R. L. MONTAGUE AND W. B. HARRISON FOR APPELLEES.

1. The Legislature, in the chapter on wills, certainly undertook to regulate both the making and revocation of wills. The ninth and tenth sections, page 834, clearly define how a will is to be revoked, and excludes all other modes.
2. There can be no doubt the testator, at his death, held a valid and enforceable lien for the unpaid price of the land. This lien was an interest on the land conveyed as would pass by will.
3. There is no sufficient proof that the testator intended to revoke or adeem the will or devise. (Civil Code, section 756; Gen. Stat., 50, article 3; Hocker v. Gentry, 3 Met., 473; Wickliffe v. Preston, 4 Ib., 180; 5 Bush. 276; Lilly, 6 Bush, 590; Gen. Stat., chapter 113.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The seventh clause of the will of Alfred Haselwood reads as follows, to wit:

"I will and bequeath to John E. Webster, Thomas

William Webster and Sarah Elizabeth Webster, children of Richard A. and Ermine H. Webster, the tract of land on which Samuel E. Williams lived and died, less fifty acres, willed to Alfred Cliff Webster, to have and to hold forever, and appoint Richard A. Webster trustee or agent for the children, and no security to be taken.''

On November 5, 1878, and after the making of the will, the testator sold the greater portion of the land so devised for $1,806, for which he took five notes, payable to himself, and retained a lien for their payment in the deed made by him to the purchaser, W. H. Haselwood.

The testator died in 1880; and on January 3, 1881, this action was brought by the above-named children of Richard A. and Ermine H. Webster and their trustee against the executor of their said uncle, Alfred Haselwood, the devisees of the residuary portion of his estate and the purchaser of the land, to recover said notes and a small sum of money that had been paid upon one of them to the executor.

In the event this relief was not afforded, then a judgment was asked against the executor for a sum equal to that for which the land had been sold.

Pending the litigation, by consent the sale of the land was rescinded; and it, so far as this suit was concerned, was to stand in lieu of the purchase money, the successful party to have the land, instead of the notes and money, as the cause was to be tried as if there had been no rescission.

The plaintiffs succeeded below; and the executor, Wm. C. Webster, and his wife and children, who were

the devisees of the residuum of the estate, and get nearly all of it, are now complaining.

It was a rule of the common law that a sale by the testator, subsequent to the making of his will, of land devised by it or of a chattel bequeathed by it, was a revocation of the devise, or an ademption of the legacy.

His intention in so doing could not be considered. This rule yet prevails in this State, unless the devisee or legatee is an heir of the testator.

Chapter 50, article 3, section 1, of the General Statutes, reads thus : " The conversion in whole or in part of money or property or the proceeds of property devised to one of the testator's heirs into other property or thing, with or without the assent of the testator, shall not be an ademption of the legacy or devise, *unless the testator so intended ;* but the devisee shall have and receive the value of such devise, *unless a contrary intention on the part of the testator appear from the will or by parol or other evidence.*"

The statute casts the burden upon one claiming against a will of showing that the testator, by selling the property, intended a revocation. In this case, therefore, it was not incumbent upon the plaintiffs to allege in their petition that he did not so intend ; and the demurrer to the petition, upon this ground, was properly overruled. It was necessary for the defendants to, and they did, allege affirmatively that it was so intended. (Hocker, &c., v. Gentry, &c., 3 Met., 463.)

Section 12, chapter 113, of the General Statutes, provides that "no conveyance or other act subsequent to.

the execution of a will shall, unless it be an act by which the will is revoked as aforesaid, prevent its operation with respect to such interest in the estate comprised in the will as the testator may have power to dispose of by will at the time of his death."

It is urged by the counsel for the appellees that by virtue of the above provision, even if Alfred Haselwood intended, by the sale of the land, to revoke the devise of it, yet the purchase money notes therefor would pass to the appellees under the will.

The conclusion we have reached in this case renders it unnecessary to discuss this question; but the zeal with which it is urged is worthy of some notice. The section of the statute last named simply provides that no act, except a revocation in accordance with the statute, shall prevent a will from operating upon the estate named therein to the extent that the testator may own it at the time of his death. If he has disposed of a part of it, then the remainder must pass under his will, owing to his being the owner of it at the time of his death.

The section of the statute first above cited applies to a case where the property named in a will is afterward converted into *other* property, while the words, "such interest in the estate," in the section last named, are equivalent to the words, "such portion of the property." The latter expressly declares that which is but an implication from the former; and there is no conflict between the two sections.

As the appellees were heirs of the testator, the only real question in this case is one of fact—did he, by a sale of the land, *intend* to revoke the devise?

It is proper to presume that the judgment of the lower court upon this question is correct; but, upon a careful examination of the record, we are satisfied of it.

The testator wrote his own will; and if he, after making it, concluded not to give the appellees any portion of his estate, it is reasonable to suppose he would have added a codicil to it to that effect.

There is no testimony tending to show that he ever expressed any desire to change it, or to violate his promise made to Ermine H. Webster upon her deathbed, to the effect that her children should have all that he might ever realize on the indebtedness of her husband to him that was secured by mortgage, and which sum, so realized, was $2,300.

It is urged, however, that the testator became unfriendly with the father of the appellees, and, therefore, withdrew his bounty from the children; but the testimony upon this point is conflicting, and if true, it is singular that he never revoked so much of the tenth clause of his will as released Richard A. Webster from the payment of all that he was then owing him.

Some of the testimony tends to show that the testator said that he had offered the Williams land to Richard A. Webster for his children, and that he had declined it, and that he had nothing *more* to offer him, or "could do nothing *more* for them;" but even admitting this to be true, yet these expressions did not necessarily mean that they were not to have what he had offered their father, or the proceeds arising from its sale.

The testimony does not disclose that he ever intimated that he had sold the land, in order to revoke the

· devise of it. In fact he did not sell all of it, and this circumstance tends to show that the revocation of the · devise to the appellees was not his object in making the sale.

He found a purchaser for a certain portion of it at a good price. Richard A. Webster says that the testator told him that he intended it for the appellees, but that he had been offered a certain price for it, and the father of the appellees then advised its sale, upon the ground -that the money would be worth more to them than the land.

One witness says that the testator told him, as late as 1879, that he intended to do something for his niece Ermine's children ; while upon the other side it is in testimony that he said that he intended W. C. Webster or his children to have all his property.

But the trouble as to the latter statement is, that the witness testifies that he heard him so say often, and 'before the year 1877 or before the will was made, and · it shows a contrary intention.

We have thus, to some extent, reviewed the testimony, in order to show that it is at least conflicting, and it is unnecessary to review the rulings of the court upon the exceptions to the depositions, because, · whether sustained or reversed, they are not sufficiently important to change the result.

The burden rested upon the appellants to show that the testator intended, by the sale, to give nearly all of his property to them, and to revoke a devise to others more nearly related to him than the appellants.

The mere sale did not create a presumption that this · was his object.

In such a case the intention must be shown by other testimony than that of the conversion merely, and the judgment is affirmed.