### Shelby v. Shelby.

(Decided June 10, 1921.)

## Appeal from Lincoln Circuit Court.

1.  Partition—Nature and Scope of Remedy.—The right of partition between joint owners of property, either real or personal, is a right favored by the law and it will not be denied except upon grounds clearly proven and apparent; hence the muniment of title of the joint owners will not be construed as forbidding partition when it is equally susceptible of a different construction. In such cases the construction favoring partition will be adopted.

2.  Reformation of Instruments—Proceedings and Relief.—A writing will not be reformed, by the insertion of a clause which was alleged to have been left out by oversight or mistake, unless the alleged oversight or mistake as well as the matter proposed to be inserted is proven by clear and convincing evidence.

3.  Contracts—Contemporaneous Construction.—The rule of contemporaneous construction is never invoked unless the language to be construed is indefinite and ambiguous and is susceptible to more than one interpretation; but even then the conduct of the parties will not necessarily be characterized as a construction of the writing by them, if during the time there was no occasion to choose between one construction and another, and by common consent the parties acted in the manner they did without any thought of a different interpretation.

CHAS. E. RODES, GEO. E. STONE, J. B. PAXTON, NELSON D. RODES and W. S. LAWWILL for appellant.

K. I. ALCORN and P. M. McROBERTS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This case is another of the long list of examples demonstrating the weakness, frailties and shortcomings of human nature and it reveals a story both sad and pathetic. Plaintiff and appellant, Mary P. Shelby, and defendant and appellee, Florence M. Shelby, are maiden sisters, the one being about 58 years of age and the other

about 43 years of age. The property involved is about six hundred acres of land in Lincoln county upon which is situated the historical old mansion of Kentucky's first governor, and plaintiff and defendant are lineal descendants of Isaac Shelby. No doubt if the premises involved could speak there would be many an unwritten story told concerning the life and conduct of that sturdy pioneer. The old fertile farm and the mansion upon it are and have long been known as "Arcadia" and were owned by Mary Steele Shelby, the mother of plaintiff and defendant, who died in the early part of 1895, having executed her will in 1892, which with some codicils was probated by the Lincoln county court on April 8, 1895. By the second clause of her will testatrix devised to her executor (Isaac Shelby, Jr.) all of the above land and the mansion house in trust with the imposed duty "To permit those of my children who are unmarried at the time of my death to occupy the residence and all the buildings used in connection therewith on the farm known as "Arcadia" with so much of the adjoining land as he thinks necessary as a home and without rent or charge therefor until my youngest child shall arrive at the age of twenty-one years. Or if it dies before, until the period of time at which it would have reached that age, if it had lived, and the rest and residue of the lands to rent out in such way as he thinks best," etc. Out of the proceeds of the rental the trustee was directed to pay taxes, repairs and other necessary expenses, including a reasonable compensation for his services, and with the balance he was directed to provide, maintain and support the unmarried children of the testatrix who were given the right to occupy "Arcadia" until such time as the youngest one would arrive at twenty-one years of age (changed to twenty-five years in a codicil), and the trustee was directed to permit such occupying children to have and to use the household and kitchen furniture of every sort, and all the carriages and buggies on hand, and to have set apart for their use such number of cows and horses as the trustee thought necessary, and he was directed to thereafter supply "such cows and horses as he thinks they (her children) need, as those set apart may die or become worthless and as the carriages and buggies wear out he will replace them with new." If such property was not on hand at the death of the testatrix the trustee was directed to supply it and he was further directed to supply an instructor or instructress to teach the younger children at the residence, and,

"He will provide said unmarried children as far as the means will allow with a comfortable and liberal support, providing not for actual necessities, but for such reasonable comforts and pleasures, including traveling expenses as they may desire and he approves." He was authorized to invest the surplus, if any, in income producing properties and if necessary to use the income from it in the maintenance and support of the occupants of "Arcadia" in the manner directed by the will. It was further provided in the same clause of the will that "upon the marriage of any of said children before the period above mentioned arrives, such child is not thereafter to be supported by the executor;" and upon the arrival of the period when the youngest child would become twenty-one years of age (twenty-five by a codicil) he was directed to sell the property and divide the net proceeds of the estate of testatrix among her living children and the descendants, if any, of those that were dead.

At the time of the death of testatrix she had thirteen children, six of whom were unmarried daughters, and they jointly occupied the old Shelby home "Arcadia" under the provisions of the will of their mother until the 14th day of January, 1898, when the children, except Susan S. Mason, who were all adults, executed what is referred to in the record as a "settlement deed," in which deed the married children of testatrix, who under the terms of her will were not given the right to occupy "Arcadia" were designated as "grantors" and the six unmarried daughters, who were at that time jointly occupying the property, were styled "grantees," but the instrument was executed and acknowledged by all of the grantors and all the grantees. By its terms the grantees were extended the right to occupy the premises during their respective lives, or until they married, and when the last one married or died in spinsterhood, the property should be sold and the proceeds divided among the heirs as therein specified. It was stipulated that when any of the grantees married the others should execute their joint note to her for the sum of $2,000.00, which was to be a lien upon the land but was not to be enforced until the last daughter died or married, and when any of the grantees married she should no longer have the right to occupy the premises but that her right should thereby cease and in the language of the deed "pass and belong to the other grantees then remaining alive and unmarried."

One of the considerations for that deed is stated therein to be a "desire to carry out the spirit and extend the gracious and benevolent provisions of the will of their said mother, who in order to secure a home for her unmarried children provided in her will that they should occupy the said land free of charge until the youngest should arrive at the age of twenty-five years, and whereas the grantors and grantees, desire to preserve and keep in the family the said land, the old family homestead and above all desire to secure the grantees a comfortabe home and support as long as they remained unmarried and alive." Mrs. Mason has died since the execution of the settlement deed, but if she left any children the record does not disclose the fact, and it appears that she executed a will in which she practicaly ratified the deed. At any rate the fact of her not executing it is not involved in this controversy.

The unmarried daughters, after the execution of the settlement deed, jointly occupied the premises as therein provided for until some time in 1917, when there were only three of them unmarried, the plaintiff, the defendant and Miss R. Tevis Shelby, at which time the latter died, leaving only plaintiff and defendant possessing the right of occupancy under the terms of the deed. It seems that for some time prior to the death of Miss Tevis Shelby there grew up an estrangement and some bitter feeling between plaintiff and defendant, who seem to possess dispositions more or less antagonistic. There is no doubt but that for some time prior to her death Miss Tevis Shelby was the tie that held together the more or less warring sisters. Her death removed the only soothing influence which made the joint occupancy of the premises by plaintiff and defendant even tolerable, and after that time the breach widened between them until it culminated in unfortunate personal encounters, and it is shown by the record that because of their different natures and temperaments, and because of their diverging views as to the superintendency and management of the jointly occupied property it is impossible to continue such occupancy with any degree of peace or comfort to either of them, to say nothing of their personal safety. Under these circumstances plaintiff temporarily abandoned the premises from about the first of the year 1918 until the first of July following, when she returned, and on August 8, 1918, she filed this action in the Lincoln circuit

court seeking a partition of the premises, including the
mansion house which it appears and seems to be con-
ceded can be divided for the purpose of separate occu-
pancy.  The petition alleged the joint right of plaintiff
and defendant to occupy the premises, and stated as a
ground for the relief sought "that the relations between
this plaintiff and the defendant have became so inharmon-
ious that it is impossible for this plaintiff and the defend-
ant to live together on said farm in peace and comfort,
or to operate the said farm jointly."  Defendant in her
answer resisted the prayer of the petition, not because
the premises could not be divided in kind, but upon the
grounds that (a), plaintiff had abandoned the premises
and refused and declined to assist defendant in its man-
agement and had thereby forfeited her interest therein,
and (b), that the terms of the settlement deed, read in
connection with the provisions of the will as properly con-
strued, provided for a joint occupancy and forbid an en-
forced partition of the premises against the consent or
wishes of any of the beneficiaries; but if not so, the an-
swer then alleged that it was the intention of the parties,
and was a part of the agreement at the time of the execu-
tion of the settlement deed, that no right of enforced
partition should ever exist, and that such provision was
left out of that deed by mistake and oversight and it was
sought to be reformed so as to include the provision and
that it be enforced as thus reformed.  A traverse and a
plea of limitations against the right of reformation were
contained in the reply.  Considerable proof was taken
by the parties, much of which is irrelevant, and after it
was all read and the closing argument in the case had
been made, the court suggested or inquired if it was pos-
sible for the parties to agree upon terms of settlement
and, to give them time in which to do so, the decision of
the case was postponed to a future day.  During that
time plaintiff, through her attorneys, mailed to the court
an unsigned draft of an agreement which she said she
would accept in settlement of her suit upon condition, of
course, that all of the submitted terms be carried out.
The defendant, during the same time, submitted a form
of an agreed judgment which she was willing to accept.
The terms of the contract submitted by plaintiff and
those of the agreed judgment submitted by defendant
were radically different, although some few parts of each
ran along parallel lines.  For instance, plaintiff provided
in her submitted compromise agreement that certain

other suits which she had filed and which were then pending should be settled and that she be paid the sum of $5,000.00; that a named person be appointed as joint agent or receiver for plaintiff and defendant and that he rent out all of the property involved, except about 100 acres, including the mansion house, which plaintiff agreed might be occupied separately by defendant at a named rental, and that such agent or receiver should never rent any part of the premises to any of the relatives of plaintiff or defendant. There were other very substantial stipulations which are not necessary to mention here and all of which were entirely omitted from the agreed judgment submitted by defendant. Upon the reconvening of the court, after he had received the drafted papers, he on his own motion filed them as a part of the record of the cause, but which was objected to by the plaintiff, who afterwards moved that they be stricken from the record, especially the draft of her submitted agreement. Her motion was overruled, and the court entered a judgment allotting to defendant the sole use of the mansion house and of about one hundred acres surrounding it at a rental to be fixed by an appointed agent for both parties (who was not the one named by plaintiff) and that the same agent rent out the remainder of the premises to whomsoever he pleased and the judgment directed that he collect six hundred dollars (proceeds of an insurance policy on a barn which had recently been destroyed by fire) and that he rebuild the barn with it, and that he pay off certain debts with the rental which he was authorized to collect, and pay all taxes and repairs and other necessary expenses, and divide the net proceeds between plaintiff and defendant

Manifestly the court was clearly in error in rendering that judgment. Its rendition is sought to be upheld by learned counsel for defendant upon the ground, as he claims, that it was an agreed judgment, but this is so far from being true that we do not deem it necessary to spend time and space in its discussion. It might be true that the physical separation of the properties made in the judgment followed the general lines indicated in plaintiff's submitted compromise agreement, but the terms and conditions upon which the defendant should occupy the portion allotted to her, as well as the terms and conditions upon which their mutual agent should rent out the remainder of the property, were wholly unobserved in the judgment, and the provision for the set-

tlement of the three other suits brought by plaintiff was entirely ignored. These statements alone, without reference to others which might be pointed out, are clearly sufficient to show the unauthorized entry of the judgment appealed from, and, as intimated, we would be compelled to reverse it for this reason alone.

But there is another equally if not more fundamental error in the judgment, which is, that under the facts disclosed by the record, plaintiff was entitled to have commissioners appointed and to have the property divided so that each occupant might manage and control her separate portion independently of any interference by the other. In making this statement it necessarily determines the insufficiency of the defenses interposed.

There was a time in the history of the law when the right to enforce a partition of jointly owned and possessed property was confined to "a division of lands by parceners or coheirs which had descended to them by common law or by custom." 38 Cyc. 152. But the law in respect to the right of partition has undergone a radical change, not only as to the character of title under which the property was held, but likewise as to the character of property which might be divided, and it is now the law in this jurisdiction that all kinds of jointly owned property may be partitioned in kind, regardless of the nature of the joint title, provided it may be done without detriment to any of the joint owners or of their interests in the estate; and even then the property may be sold and the proceeds divided according to the interests of the respective owners, unless the property is such that to divide it in kind or to sell it would violate some public policy, or offend the public sense of decency or propriety. In substantiation of the above we refer to the case of Kean v. Tilford, 81 Ky. 600, and to section 2348 of the Kentucky Statutes, which says: "Joint tenants may be compelled to make partition; and when a joint tenant dies, his part of the joint estate, real or personal, shall descend to his heirs, or pass by devise, or go to his personal representative, subject to debts, curtesy, dower or distribution." So strongly has the right of one joint owner to a partition of the jointly owned property become entrenched in the law that the right has become a favored one with the courts and they are reluctant to deny it and will not do so, unless there is some impelling necessity therefor. Illustrating such judicial attitude toward the subject we take this excerpt from 20 R. C. L. 716:

"Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common. The rule of the civil as of the common law, that no one should be compelled to hold property in common with another grew out of a purpose to prevent strife and disagreement. And additional reasons are found in the more modern policy of facilitating the transmission of titles, and in the inconvenience of joint holding. The early remedy was limited in its scope, but has been developed until, as has been said, practically the right of partition exists without regard to its difficulties." Some of the courts in upholding this right decline altogether to enforce an agreement for a perpetual joint occupancy of the property, upon the ground that it is "an unreasonable restraint on the enjoyment and use of the property." 20 R. C. L. 717; 30 Cyc. 187; Mitchell v. Starbuck, 10 Mass. 5, and Haeussler v. Missouri Iron Co. 110 Mo. 188, 19 S. W. 75, 33 Am. St. Rep. 431, 16 L. R. A. 220. But we are not called upon to adopt that rule, which we think is contrary to the holding of a majority of the courts. (See notes to the Haeussler case in 16 L. R. A. 220; notes to the case of Wakefield v. Van Tassell, 95 A. S. R. 207, on page 218, and notes to the case of McInteer v. Gillespie, 1913E, Ann. Cas. 400, on page 403.) We refer to it only for the purpose of showing the inclination of the courts to disallow any curtailment of the right of partition, unless the grounds therefor are clearly established.

An examination of the terms of the will (assuming their relevancy here) as well as the terms of the settlement deed convinces us that neither of them, nor the two combined, are sufficient to show any contractual or other binding provision denying the right of partition to any of those having the right to occupy the farm known as "Arcadia" or the mansion thereon, which is the only property involved in the suit. The central idea of both the will and the settlement deed is to make provision for a home for each of the beneficiaries and to give to each of them the right to live and to dwell upon the premises or some portion thereof and "without preference to equality or provision" and "without neglecting the welfare and comfort of any of them." There is nothing found in either of the muniments of title confining the occupancy therein provided for to solely and exclusively a joint one, and the terms and provisions thereof may be as effectually executed and carried out by a separate occupancy (provided the property may be separated into

sufficiently equal parts) as by a joint one. Keeping in mind the inclination of the courts, as above outlined, and guided thereby, we unhesitatingly conclude that there is nothing in the plain and unambiguous terms of either the will or the settlement deed, which would curtail, much less deny, the right of the occupants to partition (in kind) the premises involved, provided it can be done without detriment to the premises or to the interests of either joint owner, which fact, as we have seen, is true in this case and seems to be admitted by defendant.

But it is insisted that the proof is sufficient to show that it was a part of the agreement between the parties to the settlement deed that only a joint right of occupancy was transferred to the grantees therein and that neither of them should ever have the right to enforce a partition of the premises, and that the proof is also sufficient to show that such portion of the agreement was omitted from the deed through oversight and mistake. Assuming that the plea of limitations to the right to reform that deed is not available (but upon which we do not express an opinion) we are unable to take the view of the testimony contended for by counsel for defendant. As was naturally to be supposed some of the Shelby children sided with plaintiff, while others aligned themselves with the defendant. The latter and some of her witnesses said that they *understood* at the time the settlement deed was made that no partition should ever be made of the premises, but only a few of them go to the extent of saying that such was a part of the agreement. Plaintiff and her witnesses testified that no such subject was ever mentioned, much less was it agreed to as a part of the contract. Their testimony strikes us as being the more natural, because at the time of the execution of that deed the unfortunate storm which proved the destruction of amicable occupancy was not in the minds of the parties and perhaps was not dreamed of, much less anticipated. It is a fundamental rule, often applied by this court, that written contracts will not be reformed, because of fraud or mistake, in the absence of clear and convincing proof of the existence of the alleged grounds therefor. We do not think the testimony in this case measures up to that standard and no reformation of the contract should be decreed.

But, it is further insisted that the parties themselves by their contemporaneous acts and conduct construed the settlement deed as providing for only joint occupancy

and against separate occupancy, or the right of partition. As a foundation for this contention the fact of continued joint occupancy by the beneficiaries under the settlement deed until shortly after the death of Miss Tevis Shelby (a period of about 19 years), is cited and relied on. In reply to this contention, we might say first, that contemporaneous construction is never relied on in the absence of ambiguity in the language sought to be construed and the cases cited and relied on by counsel for defendant announce no contrary doctrine. Secondly, there was nothing so far as this record shows during that entire period of joint occupancy to test the construction of the terms of the settlement deed. So far as appears the beneficiaries were living in perfect peace and harmony and there was no occasion to discuss or consider the right of separate occupancy in the event that the then prevailing concord between the occupants should cease to exist. The mere fact that the beneficiaries peaceably occupied the premises without calling in question the right of either to a separate occupancy (there being no occasion for it) can not be said to constitute such contemporaneous construction as would influence the court in interpreting the meaning of the settlement deed.

Neither are we impressed with the contention that plaintiff's temporary absence from the premises, especially under the circumstances, deprived her of the remedy of partition. Very analagous facts are found in the case of Holt's Executor v. Deshon, 126 Ky. 310. This court in that opinion not only upheld the right of one of the joint beneficiaries to partition the premises, but further said that their temporary absence therefrom would not forfeit their interest therein, since the will under which they held (containing language very similar to that found here) only required that they make the premises their residence, "but they may be absent from the place for business or pleasure temporarily, provided they do not take up a permanent residence elsewhere." Plaintiff, under the facts proven in this case, never took up a permanent residence elsewhere so as to forfeit her interest in the premises.

Having arrived at these conclusions, it necessarily follows that the court erred in denying plaintiff the relief sought, and the judgment is reversed with directions to set it aside, and if the parties cannot agree upon a division of the premises without it, the court will appoint commissioners for that purpose and proceed to partition

the property in accordance with the practice provided therefor, and for such other proceedings consistent with this opinion as may be necessary for the granting of the relief prayed for in the petition; but plaintiff will not be allowed to lease or rent any portion of the mansion house that may be allotted to her. ·