# Murphy et al. v. Boling et al.

(Decided May 13, 1938.)

E. V. PURYEAR, CHENAULT HUGUELY, and C. C. BAGBY for appellants.

NELSON D. RODES for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Benjamin Boling, a citizen and resident of Boyle county, Ky., died testate in 1885. That part of his will pertinent to the issues involved in this appeal reads as follows:

"1st Item: I desire any debts I may owe at my death and my funeral expenses to be promptly paid.

"2nd Item: I hereby devise and bequeath to my wife, Sarah H. Boling, absolutely in fee simple title, one-half of my estate, real and personal. I also devise and bequeath to her for and during her natural life the use and possession and control for her own benefit of the other half of my estate, real and personal.

"3rd Item: Subject to the life estate of my wife therein I devise and bequeath one-half of the estate given my wife for life, that is, one-fourth of my whole estate to R. P. Jacobs, of Boyle County, Kentucky, in trust, for the separate use and benefit of my niece, Elizabeth Ann Russell, wife of R. L. Russell, for and during her natural life, and at her death the same to pass to any descendants she may leave surviving her, but if she die either before or after the death of my wife without descendants surviving her, said portion of my estate is devised to the children of my brothers, William Boling and John Boling, (said John now dead.) * * *

"4th Item: Subject to the life estate of my wife I devise and bequeath one-half of the estate given her for life, that is: one-fourth of my whole estate, to the children of my brothers William Boling and John Boling, * * *."

On the 4th day of March, 1885, a short time before testator died, and after he had written his will, dated May 5, 1883, he made and executed the following deed:

"This Indenture Witnesseth: That for and in consideration of love and affection for my niece, Bettie Russell, Wife of R. S. Russell, I, Benj. Boling, of Boyle county, convey unto said Bettie Russell for her separate use and benefit during her life time not liable to debts or control of her husband, the house and lot on corner of Walnut and First Streets in town of Danville, Kentucky, known as Jackson property and same conveyed to me by Sneeds personal representative by deed of record in Boyle county Clerk's office deed book 15, on page 341, and at the death of said Bettie said property is to go to my wife for her life if she survives said Bettie * * *"

Testator owned the property conveyed by the above deed at the time he wrote his will, which disposed of his entire estate.

It is seen that the deed created a life estate in Bettie (Elizabeth) Russell with a contingent remainder life estate in Sarah H. Boling should she survive Bettie Russell; but the deed makes no disposition of the fee after the termination of the two life estates, and it is conceded that the reversion in fee was in Benjamin Boling at the time of his death.

Sarah H. Boling, wife of testator, died in 1889, and Bettie Russell died in 1923, leaving no descendants. It is not disputed that under the terms of the will of Benjamin Boling, the children of William Boling and John Boling became the owners of the entire one-half of testator's estate that he willed to Sarah H. Boling for life.

The controversy in this case arises out of the question: What effect did the deed by Benjamin Boling to Bettie Russell have on the will of Benjamin Boling which was written prior to the execution of the deed?

Appellees, who were plaintiffs below, were devisees under the will of Benjamin Boling, and they brought this suit in 1934, claiming that the reversion in fee in Benjamin Boling passed to them as such devisees under his will after the death of Sarah H. Boling and Bettie Russell. They asked for a sale of the property on the ground of its indivisibility and that the proceeds be distributed among them according to their respective interests. The appellants, who were named as defend-

ants below, contend that the deed by Benjamin Boling to Bettie Russell worked an ademption of the property conveyed to Bettie Russell and took it out of the operation of the will and that the reversion in fee in Benjamin Boling, after the death of Sarah H. Boling and Bettie Russell, was undevised property and descended to the heirs at law of Benjamin Boling under the statute of descent and distribution.

The chancellor entered judgment adjudging that plaintiff owned an undivided nine-tenths interest in the property in question and that the other one-tenth undivided interest is owned by the defendants; and further adjudged that the property be sold because of its indivisibility and the proceeds divided according to the interest indicated in the judgment. It was further adjudged that upon the death of Bettie Russell on March 19, 1923, the plaintiffs were entitled to the joint occupancy of the property, but that the defendants and their ancestors, Fleming Murphy and Julia F. Murphy, have had the exclusive possessions of the real estate from March 19, 1923, until the year 1936, when the property was placed in the hands of the court's receiver, and that defendants be charged with a rental of $20 per month, totaling $2,600, but that amount is to be credited by $1,025.72, leaving a balance of $1,574.28, which in the settlement of the property will be a charge against the proceeds arising from the sale of the undivided one-tenth interest in the real estate owned by the defendants; and also adjudged a lien against the property for certain taxes and street paving. But since no question is raised in regard to the rental and other mode of settlement as indicated by the chancellor, we need not discuss that question. The only question involved in this appeal is, which set of litigants, plaintiffs or defendants, owned the property; and a determination of that question depends upon whether the deed by Benjamin Boling to Bettie Russell was an ademption and had the effect of taking the property in question out of the operation of the will; or, whether the reversion in Benjamin Boling passed under his will to the devisees thereof. It is clear that by the deed in question Benjamin Boling conveyed only a life estate to Bettie Russell and a second life estate to Sarah H. Boling, contingent upon her surviving Bettie Russell, but he did not part with or divest himself of the reversion in the fee, which he retained and owned at the

time of his death. This conclusion is concurred in by appellant in a statement in his brief as follows:

> "Therefore, the testator, at the time of his death, which occurred in March 1885, owned the reversion in the property conveyed Bettie Russell for her life and to Sarah Boling, after Bettie's death, for her life."

It is an elementary rule of law that an estate in reversion can be transferred by will. In the case of Alexander v. De Kermel, 81 Ky. 345, it is said:

> "According to our view of the law found in textbooks and many decisions of great value, we are convinced that the language of the deed of 1856 created a reversion in Thomas Bullitt Alexander, which is a devisable estate both at common law and by our statute on wills."

Also, in 68 C. J. p. 490, the rule is thus stated:

> "Whatever is descendable is devisable. That which one owns, he can dispose of by will."

The will of Benjamin Boling disposed of his entire estate he owned at the time of his death, which included the reversion in the property in question. But it is the contention of appellant that the deed in question worked an ademption and removed the property in litigation from the operation of the will by a different and inconsistent disposition of it. It may be conceded that the deed did remove the property from the operation of the will to the extent of the life estates it conveyed, but it must not be overlooked, as we have stated, that the reversion of fee in the property, after the termination of the life estates, was never conveyed and remained in the testator and grantor, hence no ademption was affected as to the fee in remainder.

In Dillender v. Wilson, 228 Ky. 758, 16 S. W. (2d) 173, the doctrine of ademption of legacies and devises was elaborately discussed and defined. In that case the testator, while owning real estate in Henry county, Ky., devised generally all of his property to his wife absolutely. Later, he sold his Henry county property and bought real estate in Grant county. The contention was made in that case that the sale of the Henry county land and a reinvestment of the proceeds of the sale in

the Grant county land was an ademption of the devise to the widow of the testator, but it was held that there was no ademption. The court said:

"Ademption, where satisfaction by payment during the life of testator is not involved, is the destruction or extinction of a bequest by means of the sale or other disposition of the things specifically bequeathed (Page on Wills, section 779), and it is effected when by some act of the testator the subject-matter has ceased to exist in the form in which it is described in the will, so that on his death there is nothing answering the description to be given to the beneficiary. White v. Ponder, 180 Ky. 386, 202 S. W. 867, quoting 40 Cyc. 1914. To effect an ademption, the legacy or bequest should be specific and not general (14 R. C. L. 344; Reynolds' Executor v. Reynolds, 187 Ky. 324, 218 S. W. 1001), for it can apply only to specific gifts of which predisposition has been made. * * *

"But, where the bequest is of the entire estate, no matter how it may have been changed in form or character, it is just as capable of passing under the will on the death of testator as on the date it was executed. Hence there was no ademption of the devise to the widow of testator. This disposition of the estate seems also to be within the contemplation of section 4835 of the Statutes, as construed by cases cited in the annotations."

In the case at bar there is no contention made that there was any specific legacies or devises made, but on the contrary the will simply disposed of the whole of testator's estate, and this is admitted in brief of counsel for appellant. He says:

"The property which he had deeded away had never been specifically devised or mentioned or described, as distinguished from any other property he owned."

Section 4835 of Kentucky Statutes reads:

"No conveyance or other act subsequent to the execution of a will shall, unless it be an act by which the will is revoked as aforesaid, prevent its operation with respect to such interest in the estate comprised in the will as the testator may have

power to dispose of by will at the time of his death.''

In construing the statute, supra, in the case of Haselwood's Ex'r v. Webster, 82 Ky. 409, the court said:

"The section of the statute last named [4835] simply provides that no act, except a revocation in accordance with the statute, shall prevent a will from operating upon the estate named therein to the extent that the testator may own it at the time of his death. If he has disposed of a part of it, then the remainder must pass under his will, owing to his being the owner of it at the time of his death.''

The facts in this case, measured to the authorities herein cited, impel us to the conclusion that the reversion in fee in the property in question passed under the will of Benjamin Boling and the chancellor did not err in so holding.

It is next insisted that even though the reversion in the property in question passed under the will of Benjamin Boling, yet, by contemporaneous construction of the parties and those under whom they claim, the will did not operate on the property in controversy and cannot now be made to do so. This argument is based on the fact that Sarah H. Boling and R. P. Jacobs were the executors named in the will of Benjamin Boling and by their subsequent conduct they apparently acquiesced in the construction that the property conveyed by the deed was removed from the operation of the will. Mrs. Boling qualified as executor of her husband's will and made final settlement of the personal and real estate and reported the one-half to be held by her absolutely and the other one-half for life. But no reference is made in the settlement to any claim to the property in litigation or to any reversion therein. Mrs. Boling died in 1889, leaving a will in which she disposed of her property. A number of the appellees, plaintiffs below, claim under her will. But Mrs. Boling's will makes no mention of any interest in the property in litigation or any claim to any reversionary interest therein. After disposing of her property she appointed the same R. P. Jacobs executor of her will and authorized and directed him or any administrator with her will annexed to sell and convey any and all real estate she owned at the time of her death and in such

manner and upon such terms as he may think proper. Mr. Jacobs qualified and settled Mrs. Boling's estate, in which settlement he, the executor, sold the real estate and personal property she owned. However, the reversion in the property in litigation was not sold or offered for sale in any of those settlements.

It is argued that the fact that the reversionary right was not sold or reported in the settlements of the estates of Benjamin Boling and Sarah Boling with their devisees under the wills, clearly indicate that the parties in interest did not consider that the reversion in question was within the operation of the will. But we do not think that the appellees who claim under the will of Benjamin Boling are responsible for the conduct of the executor in the settlement of the estate. They merely received their share as reported by him and receipted therefor. They still owned their interest in the reversion and perhaps did not consider it material whether or not it was sold or reported. Their conduct was not such as would amount to a "construction" or interpretation of the effect the deed had on the will. And if it be conceded that the executor considered the reversion taken out of the operation of the will by reason of the deed, the devisees under the will cannot be held responsible for the misinterpretation or construction of the executor of the will and deed. But, be this as it may, it must not be overlooked that the doctrine of contemporaneous construction of a written instrument is applicable only in case of ambiguity in the language sought to be construed, or when there is some occasion to test the construction of the instrument involved.

In Shelby v. Shelby, 192 Ky. 304, 233 S. W. 726, speaking of and analyzing the doctrine of contemporaneous construction, it is said (page 730):

"But it is further insisted that the parties themselves by their contemporaneous acts and conduct construed the settlement deed as providing for only joint occupancy and against separate occupancy, or the right of partition. As a foundation for this contention by the beneficiaries under the settlement deed until shortly after the death of Miss Tevis Shelby (a period of about 19 years) is cited and relied on. In reply to this contention we might say: First, that contemporaneous construction is

never relied on in the absence of ambiguity in the language sought to be construed, and the cases cited and relied on by counsel for defendant announce no contrary doctrine; secondly, there was nothing, so far as this record shows, during that entire period of joint occupancy to test the construction of the terms of the settlement deed. So far as appears, the beneficiaries were living in perfect peace and harmony, and there was no occasion to discuss or consider the right of separate occupancy in the event that the then prevailing concord between the occupants should cease to exist. The mere fact that the beneficiaries peaceably occupied the premises without calling in question the right of either to a separate occupancy (there being no occasion for it) cannot be said to constitute such contemporaneous construction as would influence the court in interpreting the meaning of the settlement deed.''

In the case at bar there is no ambiguity in either the will or deed, nor was there any occasion for a test being made of the rights of the devisees under the will of Mr. Boling so long as Bettie Russell, the life tenant, lived. It follows that the doctrine of contemporaneous construction is not applicable to the facts of this case.

Finally, it is argued that appellants own the property in question by adverse possession. In June, 1907, Bettie Russell conveyed to C. C. Bagby her life estate in the property, and in November of the same year she conveyed to Bagby a remainder interest which she had inherited from her mother, and Bagby took possession of the property under those deeds. However, in 1908 Mr. Bagby purchased certain interests of the children of William Boling in the property, which interests were partly vested and partly contingent upon their surviving Bettie Russell. In those various deeds, except the life estate deed, it was recited, in substance, that the grantors were heirs at law of Benjamin Boling, and it is insisted that this was a recognition by the grantors that the reversion in question did not pass under the will of Benjamin Boling, but to his ''heirs at law'' under the statute of descent and distribution. The words ''heirs at law,'' as used in the deed, perhaps were not intended to be used in their technical legal sense, but merely referred to Benjamin Boling as their source of title, whether by deed or will. We do not think this

circumstance is sufficient to warrant the inference that the grantors meant to repudiate their title under the will and claim under the statute of descent and distribution. Mr. Bagby held the property under the deeds mentioned above until 1915, when he divided it into three lots and sold one of them to appellant Spencer Holmes, and in 1917 he sold another lot to Flem and Julia Murphy, and in 1920 he sold the third lot to Florence Engram.

It is insisted that appellants and C. C. Bagby, under whom they claim, have held the property adversely for more than fifteen years before the filing of the suit, claiming under title as heirs at law of Benjamin Boling, which title is inconsistent with the title of appellees who claim as devisees of Benjamin Boling.

In Superior Oil Corporation v. Alcorn, 242 Ky. 814, 47 S. W. (2d) 973, it is held that no right of action exists in favor of the remaindermen until the life estate has terminated either by the death of the life tenant or by some act of the life tenant that amounts to a repudiation or renunciation of the life estate and that notice has been given to the remaindermen of such repudiation or renunciation and of the particular facts forming the basis of the adverse title which the life tenant is asserting to the property. The court said (page 986):

> "When we speak of the renunciation or repudiation of a life estate we mean such an unequivocal act by the life tenant as would destroy his claim as life tenant, so that he could not thereafter assert it, and would accelerate and mature the remainder."

And it is further pointed out in the case, supra, that for the life tenant to make a deed to another in which he claims to own the real estate in fee simple is no such repudiation of the life estate as to start the running of the statute of limitations.

The deed and will of Benjamin Boling being matters of record, C. C. Bagby and his grantees had notice of these instruments. Also the deed from Bettie Russell to Bagby conveying to him her life estate was recorded and appellants had notice that Bettie Russell conveyed her life estate only to Mr. Babgy and that he merely took her place, or succeeded to her rights as a life tenant. We do not think that the purchase of

Bettie Russell's life estate by Bagby and other purchases of the interests of remaindermen which interests were contingent upon their surviving Bettie Russell, and which deeds specified a remainder interest in the property—giving recognition to the life estate of Bettie Russell—constituted such adverse or antagonistic source of title as to amount to notice to appellees that Bagby and his grantees (appellants) were claiming under a title hostile to and having a different source to that of appellees.

Appellants cite and rely, inter alia, on the case of Hargis v. Flesher Petroleum Company, 231 Ky. 442, 21 S. W. (2d) 818. In that case Hargis was claiming under a will which was void and could invest him with no title. He was entitled to possession of the property only as a life tenant by the curtesy, but he sold the property against the remaindermen and made a deed to the fee reciting in the deed the will as his source of title, and because the remaindermen failed to bring their action within the statutory period, the plea of limitation was held good against them because they had notice of an adverse holding and claim under Hargis' deed. It is pointed out in that opinion that Hargis entered upon the real estate under a will that purported to give him a fee-simple title to the property and he held possession for more than fifteen years. The act of probating the will purporting to give Hargis fee-simple title and his taking possession under such will was a repudiation of his life estate by the curtesy, and a destruction of such life estate, and the remaindermen then had a right of action to recover the property. The will, though void, under which Hargis claimed had no connection with the title of the remaindermen and his purported source of title was foreign and antagonistic to the title of the remaindermen. The difference in the facts in that case and the case at bar is obvious. Bettie Russell entered under the deed from Benjamin Boling and held possession until 1907, when Mr. Bagby purchased her life estate, and held until 1917 and then conveyed his interest, which was a life estate only, to appellants, and they merely succeeded to the rights of Bagby and held possession until the death of Bettie Russell.

It is our conclusion, therefore, that the statute of limitations could not in any event have started to run

before the death of Bettie Russell, and the suit having been brought within the statutory period after her death, the plea of limitations is not available.

The judgment of the chancellor being in harmony with our views, it is affirmed.